[Cite as *In re L.R.*, 2020-Ohio-2990.]

`

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

IN RE:

     **L.R.,**

ALLEGED DELINQUENT CHILD.

**CASE NO.  4-19-19**

**O P I N I O N**

Appeal from Defiance County Common Pleas Court
Juvenile Division
Trial Court No. 32817-4

**Judgment Affirmed**

**Date of Decision:  May 18, 2020**

APPEARANCES:

    *Abigail Christopher* **for Appellant**

    *Joy S. O'Donnell* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Adjudicated delinquent child-appellant, L.R., appeals the October 2, 2019 judgment entry of disposition of the Defiance County Court of Common Pleas, Juvenile Division. For the reasons that follow, we affirm.

{¶2} On April 12, 2019, a complaint was filed against L.R. charging him with gross sexual imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree if committed by an adult. (Doc. No. 1). On May 15, 2019, L.R. appeared and denied the charge in the complaint. (Doc. No. 9).

{¶3} On August 23, 2019, L.R. withdrew his denial of the charge in the complaint and admitted the charge. (Doc. No. 24). The juvenile court accepted L.R.'s admission and adjudicated him a delinquent child as alleged in the complaint. (*Id.*).

{¶4} At a dispositional hearing on October 2, 2019, the juvenile court committed L.R. to the legal care and custody of the Ohio Department of Youth Services ("DYS") for a minimum of six months (not to exceed L.R.'s 21st birthday). (Doc. No. 31). In *addition* to committing L.R. to the legal care and custody of DYS, the juvenile court placed L.R. on "probation" until November 26, 2025. (*Id.*).

{¶5} On November 1, 2019, L.R. filed a notice of appeal. (Doc. No. 40). He raises three assignments of error for our review. For ease of our discussion, we will

discuss L.R.'s first and second assignments of error together, followed by his third assignment of error.

**Assignment of Error No. I**

**The Juvenile Court exceeded its statutory authority and undermined the executive branch when it committed L.R. to DYS and placed him on a five-year term of court probation for the same charge. R.C. 2152.22(A); Fourteenth Amendment to the U.S. Constitution; and Article I, Section 16, Ohio Constitution. (Entry 10/2/2019 p. 1).**

**Assignment of Error No. II**

**A conflict exists between the dispositional options in R.C. 2152.19(A) and 2152.22(A), but the specific provision in R.C. 2152.22(A) prevails, and the juvenile court abused its discretion by committing L.R. to DYS and placing him on probation for the same offense. R.C. 2152.19(A)(4); R.C. 2152.22(A); Fourteenth Amendment to U.S. Constitution; and Article I, Section 16, Ohio Constitution. (10/10/2019 Entry p. 1).**

{¶6} In his first and second assignments of error, L.R. argues that the juvenile court abused its discretion by committing him to the legal care and custody of DYS *and* placing him on probation for the same offense. Specifically, L.R. argues that R.C. 2152.19 and 2152.22 provide conflicting options for disposition and that the juvenile court was without jurisdiction to impose probation after it committed him to the legal care and custody of DYS.

*Standard of Review*

{¶7} We review a juvenile court's disposition for a child adjudicated delinquent under an abuse-of-discretion standard. *In re D.S.*, 111 Ohio St.3d 361,

2006-Ohio-5851, ¶ 6; *In re T.H.*, 12th Dist. Clermont No. CA2006-02-021, 2007-Ohio-352, ¶ 10; *In re D.W.*, 10th Dist. Franklin No. 19AP-221, 2019-Ohio-5259, ¶ 7. An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

*Analysis*

{¶8} Ohio's juvenile courts—deriving power solely by statute—are courts of limited jurisdiction. *In re Williams*, 4th Dist. Washington No. 05CA56, 2006-Ohio-4657, ¶ 5, citing *Carnes v. Kemp*, 104 Ohio St.3d 629, 2004-Ohio-7107, ¶ 25 and *In re R.K.*, Cuyahoga No. 84948, 2004-Ohio-6918, ¶ 22. To that end, R.C. Chapter 2152 governs juvenile-delinquency matters. *See In re Cross*, 96 Ohio St.3d 328, 2002-Ohio-4183, ¶ 11.

> The purposes underlying all juvenile dispositions are set forth in R.C. 2152.01(A): "to provide for the care, protection, and mental and physical development of children subject to this chapter [R.C. Chapter 2152], protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender."

*In re H.V.*, 138 Ohio St.3d 408, 2014-Ohio-812, ¶ 32 (O'Connor, C.J., dissenting), quoting R.C. 2152.01(A). "And '[t]hese purposes shall be achieved by a system of graduated sanctions and services.'" *Id.*, quoting R.C. 2152.01(A).

{¶9} "The various traditional juvenile dispositions available to a trial court are delineated in R.C. 2152.16, 2152.17, 2152.19, and 2152.20." *Id.*, citing R.C. 2152.02(Z). In particular, when determining an appropriate disposition for a

juvenile who has been adjudicated delinquent, the juvenile court may commit the juvenile to the legal care and custody of DYS; place the juvenile in a detention facility or on house arrest; impose fines; or impose any of the other options (or combination of options) described in R.C. Chapter 2152. *Id.* at ¶ 33, citing R.C. 2152.16, 2152.19(A)(3), (4)(j), and 2152.20(A)(1).

{¶10} On appeal, L.R. contends that "[t]he juvenile court's order imposing a term of five-year court probation under R.C. 2152.19(A)(4) and committing [him] to DYS custody under R.C. 2152.16 is contradictory" and creates "a conflict within the juvenile code." (Appellant's Brief at 7). Other than his blank assertion that the juvenile court's order of commitment to the legal care and custody of DYS conflicts with the juvenile statute authorizing a juvenile court to impose community-control sanctions, L.R. does not offer an argument articulating the specific reasons that the statutes are in conflict. Instead, L.R. contends that the jurisprudence relative to the adult-sentencing scheme is instructive.

{¶11} Under the adult-felony-sentencing scheme, trial courts are required to impose either a prison term or community-control sanctions as to each count. *State v. Duncan*, 12th Dist. Butler No. CA2015-05-086, 2016-Ohio-5559, ¶ 19, quoting *State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, ¶ 23, quoting *State v. Berry*, 3d Dist. Defiance No. 14-12-04, 2012-Ohio-4660, ¶ 21. Addressing the adult-felony-sentencing scheme, the Supreme Court of Ohio concluded that the

specific language of the statutory scheme reflects the General Assembly's intent for prison terms and community-control sanctions to be *alternative* sanctions. *Anderson* at ¶ 28. Accordingly, under the adult-felony-sentencing scheme, "community control sanctions and prison terms are mutually exclusive and cannot be imposed at the same time on the same count of conviction." *Berry* at ¶ 21

{¶12} Unlike the sweeping amendments to the adult-felony-sentencing scheme, which established the imposition of a prison term or community-control sanctions as alternative sanctions, the same limiting language is not present in the statutes governing juvenile dispositions. *See, e.g.*, *In re J.A.*, 5th Dist. Stark No. 2017CA00187, 2018-Ohio-1609, ¶ 26 (noting that the legislature did not include "the same R.C. 2929.15(B) options in the juvenile justice system"); *In re Chappell*, 164 Ohio App.3d 628, 2005-Ohio-6451, ¶ 24 (7th Dist.) ("assuming that the juvenile statutes do not otherwise contain the equivalent procedural protections found in R.C. 2929.14(E)(4) and 2929.19(B)(2)(c)"); *In re Joshua R.C.*, 6th Dist. Erie No. E-05-016, 2005-Ohio-6248, ¶ 12. Because the General Assembly did not include the same limiting language in the statutes governing juvenile dispositions, we are not persuaded by L.R.'s argument that the jurisprudence relative to the adult-sentencing scheme should guide our decision here. *See In re T.M.*, 11th Dist. Geauga Nos. 2017-G-0113 and 2017-G-0114, 2018-Ohio-2450, ¶ 14-16 (rejecting T.M.'s

argument that the adult-felony-sentencing scheme prohibits a juvenile court from imposing a "no-contact order in conjunction with confinement").

{¶13} R.C. 2152.16 and 2152.17 specify a juvenile court's authority to commit a juvenile to the legal care and custody of DYS. *See id.* at ¶ 17. *See also In re B.H.*, 6th Dist. Erie No. E-14-096, 2015-Ohio-2296, ¶ 26. Further, "R.C. 2152.19 sets forth *additional* dispositional orders a juvenile court may impose" and provides, in relevant part:

> (A) If a child is adjudicated a delinquent child, the court may make any of the following orders of disposition, *in addition* to any other disposition authorized or required by this chapter:
>
> * * *
>
> (4) Place the child on community control under any sanctions, services, and conditions that the court prescribes.

(Emphasis added.) *In re T.M.* at ¶ 18; R.C. 2152.19(A)(4). Moreover, "R.C. 2152.19(A)(8), a catchall provision, provides that a juvenile court can '[m]ake any further disposition that the court finds proper,' except that it cannot place the child in a correctional institution or a community corrections facility where adults are held." *In re T.M.* at ¶ 22, quoting R.C. 2152.19(A)(8).

{¶14} As a felony of the third degree if committed by an adult, gross sexual imposition carries the possibility of a commitment to the legal care and custody of DYS "for an indefinite term consisting of a minimum period of six months and a maximum period not to exceed the child's attainment of twenty-one years of age."

R.C. 2152.16(A)(1)(e). Here, the juvenile court committed L.R. to the legal care and custody of DYS for a minimum period of six months and also placed L.R. on "probation" until November 26, 2025. (Doc. No 31). Under its order of "probation," the juvenile court ordered L.R. to attend "Counseling, Sex Offender Treatment, or other special programs as directed by [his] Probation Officer" and imposed a no-contact order with the victim. (*Id.*).

{¶15} Before we address the juvenile court's authority to impose community-control sanctions in conjunction with an order of commitment, we must first address the juvenile court's imposition of "probation" in this case. "'In January 2002, the General Assembly replaced the rubric "probation" in juvenile dispositions and adopted new dispositional options under the heading "community control."'" *In re J.A.*, 2018-Ohio-1609, at ¶ 25, quoting *In re J.F.*, 121 Ohio St.3d 76, 2009-Ohio-318, ¶ 9. That is, "'"[c]ommunity control," as described in R.C. 2152.19, replaced "probation," as described in former R.C. 2151.355 * * * .'" *Id.*, quoting *In re J.F.* at ¶ 10, *citing In re Cross*, 96 Ohio St.3d 328, 2002-Ohio-4183, at ¶ 11. "'An order of "probation" under former R.C. 2151.355, encompassed the court's broad, discretionary power to craft appropriate controls for delinquent juveniles, enforced through ongoing judicial oversight.'" *Id.*, quoting *In re J.F.* at ¶ 10. "'Under former R.C. 2151.355, it was the dispositional order of probation itself that enabled a court to impose and monitor the juvenile's compliance with the conditions of probation.'"

*Id.*, quoting *In re J.F.* at ¶ 10.  "'In contrast, R.C. 2152.19 uses the term "community control" to describe discretionary court-ordered and court-supervised requirements on the behavior of delinquent children.'"  *Id.*, quoting *In re J.F.* at ¶ 11, citing R.C. 2152.19.  "'Under R.C. 2152.19, a dispositional order of community control may include one or several conditions—such as "intensive probation supervision," "basic probation supervision," and "community service"—all of which are subject to ongoing supervision by the court.'"  *Id.*, quoting *In re J.F.* at ¶ 11.  Importantly, "'[p]robation, no longer a stand-alone disposition, has become a subcategory or optional element of community control.'"  *Id.*, quoting *In re J.F.* at ¶ 11.

{¶16} Here, because the juvenile court utilized a "check-the-box" dispositional form, which lists "probation" as a category of available sanctions with a number of conditions listed under the probation category, our logical assumption is that the juvenile court's intention was to impose community control within the meaning of R.C. 2152.19.  *See Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, at ¶ 17 ("Ohio courts have recognized that a no-contact order is a community-control sanction.").  Thus, we will address whether the juvenile court abused its discretion by imposing community-control sanctions in conjunction with its order of commitment.

{¶17} Addressing whether a juvenile court may impose a no-contact order in conjunction with an order of commitment, our sister appellate district concluded

that the statutes governing juvenile dispositions authorize a juvenile court to impose a no-contact order either as a specific sanction under community control *or* in conjunction with an order of commitment to DYS under the juvenile court's broad authority under R.C. 2152.19(A)(8). *See In re T.M.* at ¶ 23. We agree that the statues governing juvenile dispositions authorize a juvenile court to impose community-control sanctions as part of a commitment order. *See id.* at ¶ 16. *See also In re Braun*, 4th Dist. Washington No. 01CA42, 2002-Ohio-3021, ¶ 38 (noting that former "R.C. 2151.355(A), as it existed at the time of the original dispositional order in this case, provided the court with numerous dispositional options, including probation, commitment to the DYS, and any other disposition that the court deemed proper" and that "[t]he General Assembly did not list these dispositional options in the alternative in the statute"). Indeed, although the imposition of community control in conjunction with a commitment to DYS may be largely inconsequential, there is nothing in the juvenile code that prohibits a juvenile court from ordering the dispositions conjunctively.

{¶18} Importantly, beyond the prescriptions of R.C. 2152.16 and 2152.19(A)(4), the catchall provision under R.C. 2152.19(A)(8) provides a juvenile court considerable discretion in crafting a juvenile disposition. When interpreting this catchall provision, the Supreme Court of Ohio determined that the General Assembly's use of the word "any" in the provision permits a juvenile court the

discretion "to take 'any' steps the judge believes necessary to fully and completely implement the rehabilitative disposition of a juvenile." *In re Caldwell*, 76 Ohio St.3d 156, 159 (1996). In reaching its decision, the Supreme Court noted "that its *broad interpretation* of the catchall provision 'is consistent with the underlying purposes and goals of the juvenile court system, i.e., supervision, care and rehabilitation of the delinquent youth.'" (Emphasis added.) *In re T.M.* at ¶ 24, quoting *In re Caldwell* at 160, and citing *In re H.V.*, 138 Ohio St.3d 408, 2014-Ohio-812, at ¶ 9 and *In re G.L.L.*, 11th Dist. Geauga Nos. 2014-G-3189 and 2014-G-3190, 2015-Ohio-3539, ¶ 55-57.

{¶19} Accordingly, "the extent of a juvenile court's sentencing authority in a delinquency case is manifestly broader than in an adult criminal case. To this extent, the minimal limitation upon a juvenile court's authority under the catchall provision is that disposition cannot directly conflict with another statute governing juveniles." *Id.* at ¶ 25, citing *In re Williams*, 2006-Ohio-4657, at ¶ 11, fn. 4. *See also In re K.H.*, 4th Dist. Washington No. 09CA35, 2009-Ohio-7070, ¶ 27. For these reasons, we conclude that the statutes governing juvenile dispositions authorize a juvenile court to impose community-control sanctions in conjunction with an order of commitment and that those conjunctive dispositions are not in conflict. *See In re T.M.* at ¶ 23. *See also In re H.V.*, 138 Ohio St.3d 408, 2014-

Ohio-812, at ¶ 20 ("R.C. 2152.19(A)(8) expressly grants juvenile courts the authority to make any disposition that the court finds proper.").

**{¶20}** Therefore, because we conclude that the juvenile court had the authority to impose community-control sanctions in conjunction with an order of commitment, the juvenile court's order of disposition in this case is not void. *See In re T.M.* at ¶ 26. Accordingly, L.R.'s first and second assignments of error are overruled.

### Assignment of Error No. III

**L.R. was denied effective assistance of counsel. Sixth and Fourteenth Amendments to the U.S. Constitution; Section 10, Article I, Ohio Constitution. (10/2/2019, p. 1).**

**{¶21}** In his third assignment of error, L.R. argues that his trial counsel was ineffective for failing to object to the juvenile court's dispositional order committing him to the legal care and custody of DYS *and* placing him on probation for the same offense.

*Standard of Review*

**{¶22}** A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or

unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St. 3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, 438 U.S. 910, 98 S.Ct. 3135 (1978).

{¶23} "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 3d Dist. Allen No. 1-13-04, 2014-Ohio-259, ¶ 48, quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

{¶24} Based on our conclusion in L.R.'s first and second assignments of error, L.R.'s argument in his third assignment that his trial counsel was ineffective

for failing to object to the juvenile court's dispositional order committing him to the legal care and custody of DYS *and* placing him on probation for the same offense is without merit. Accordingly, L.R.'s third assignment of error is overruled.

**{¶25}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the juvenile court.

*Judgment Affirmed*

**SHAW, P.J. and PRESTON, J., concur.**

**/jlr**