[Cite as *In re B.C.*, 2022-Ohio-1298.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

IN THE MATTER OF:          :
                          :
    B.C.,                  :          Case No. 21CA18
                          :
    Adjudicated Delinquent Child.  :
                          :
                          :          <u>DECISION AND JUDGMENT</u>
                          :          <u>ENTRY</u>

---

<u>APPEARANCES</u>:

Lauren Hammersmith, Assistant State Public Defender, Columbus, Ohio, for Appellant.

Kelsey R. Riffle, Washington County Assistant Prosecuting Attorney, Marietta, Ohio, for Appellee.

---

Smith, P.J.

{¶1} Appellant, B.C., appeals the trial court's decision that (1) committed him to the legal custody of the Department of Youth Services (DYS) for a minimum period of 12 months and a maximum period not to exceed his attainment of the age of 21, and (2) placed him on probation as a community control condition. Appellant raises three assignments of error. First, Appellant argues that the juvenile court imposed a void dispositional order. Appellant alleges that the juvenile statutes do not allow juvenile courts to enter a dispositional order that both commits a child to DYS and

that places the child on court supervised probation as a community control condition. Alternatively, Appellant contends that the trial court plainly erred by committing him to DYS and by placing him on probation as a community control condition. Appellant asserts that the trial court plainly erred by determining that the juvenile dispositional statutes permitted it to impose both a DYS commitment and a term of court supervised probation as a community control condition. Last, Appellant argues that he did not receive the effective assistance of counsel. Appellant claims that trial counsel was ineffective for failing to object to the court's dispositional order that imposed both a DYS commitment and a term of court supervised probation as a community control condition. After our review of the record, we do not agree with any of Appellant's arguments. Accordingly, we overrule Appellant's three assignments of error and affirm the trial court's judgment.

FACTS

{¶2} On June 24, 2021, a complaint was filed that alleged Appellant to be a delinquent child for engaging in conduct that would constitute the following criminal offenses, if committed by an adult: (1) rape, in violation of R.C. 2907.02(A)(1)(c), a first-degree felony; (2) rape, in violation of R.C. 2907.02(A)(1)(b), a first-degree felony; and (3) gross sexual imposition, in violation of R.C. 2907.05(A)(1), a fourth-degree felony.

{¶3} Appellant later admitted the allegations of the second count of the complaint, rape, in violation of R.C. 2907.02(A)(1)(b), and the trial court dismissed the two remaining counts.

{¶4} On September 23, 2021, the court held a dispositional hearing. At the start, the probation officer stated that he believes that committing Appellant to DYS for one year with a recommendation that he receive treatment at Paint Creek "is probably the best disposition" to rehabilitate Appellant. The state likewise asked the court to commit Appellant to DYS and stated that it "would support the recommendation that [Appellant] go to Paint Creek as well." Appellant's counsel indicated that he did not "have anything to add." Additionally, neither Appellant's father nor Appellant stated that they had anything to say.

{¶5} The court then stated: "Well, the Court in this matter, having discussed it along the way at the various hearings with counsel for the state and defense, is going to honor the agreement that was reached prior to [Appellant] entering an admission to count two." The court announced that it would commit Appellant to DYS for a minimum period of one year and a maximum period not to exceed the age of 21. The court additionally recommended that Appellant be placed in a sex offender rehabilitation program at Paint Creek. The court informed Appellant that the treatment

program ranges from 12 to 18 months and that Appellant's release date would depend upon his treatment progress. The court further stated that it will place Appellant "on community control including probation" upon his release. The court explained that it will "place him on it now, but it won't be in effect really until you're released." The court advised Appellant that when he is released, Appellant will "have a parole officer and a probation officer assigned to you, to monitor you, make sure you're following the rules, and staying out of trouble."

{¶6} The court asked the parties whether they had anything further to add, and Appellant's counsel, Appellant, and Appellant's father stated that they did not have anything to add or any questions to ask.

{¶7} The court subsequently journalized its dispositional order that committed Appellant to DYS's legal custody for an indefinite term consisting of a minimum period of 12 months and a maximum period not to exceed the age of 21. The court also placed Appellant on community control by placing him "on probation until further order of the Court subject to the general supervision and control of the Washington County Juvenile Probation Department." The court further recommended and "approve[d]" Appellant for the "sex offender program at Paint Creek." This appeal followed.

ASSIGNMENTS OF ERROR

I.  THE JUVENILE COURT EXCEEDED ITS STATUTORY AUTHORITY AND UNDERMINED THE EXECUTIVE BRANCH WHEN IT COMMITTED B.C. TO DYS AND PLACED HIM ON A TERM OF COURT PROBATION FOR THE SAME CHARGE.

II. A CONFLICT EXISTS BETWEEN THE DISPOSITIONAL OPTIONS IN R.C. 2152.19(A) AND 2152.22(A), BUT THE SPECIFIC PROVISION IN R.C. 2152.22(A) PREVAILS, AND THE JUVENILE COURT ABUSED ITS DISCRETION BY COMMITTING B.C. TO DYS AND PLACING HIM ON PROBATION FOR THE SAME OFFENSE.

III. B.C. WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

ANALYSIS

FIRST AND SECOND ASSIGNMENTS OF ERROR

{¶8} Appellant's first and second assignments of error involve related issues. For ease of discussion, we consider them together.

{¶9} In his first assignment of error, Appellant argues that the trial court erred as a matter of law by committing him to the legal custody of DYS and by placing him on court-supervised probation. Appellant contends that after a juvenile court commits a delinquent child to the legal custody of DYS, the juvenile court "relinquishes control with respect to the child except for granting judicial release or juvenile sex offender classification." Appellant asserts that after a child completes the prescribed minimum

commitment, a juvenile court can only "grant the child judicial release to DYS supervision, not court supervision." Appellant thus claims that a juvenile court cannot commit a child to the legal custody of DYS and order the child to serve a term of court-supervised probation. Appellant therefore alleges that the trial court's dispositional order is void.

{¶10} In his second assignment of error, Appellant argues that the trial court abused its discretion by committing him to DYS and by placing him on probation. Appellant contends that the trial court abused its discretion by failing to "abide by the rules of statutory interpretation when imposing [its] disposition." Appellant asserts that committing the child to DYS, as R.C. 2152.16 permits, and placing the child on probation, as R.C. 2152.19(A)(4)(a) permits, create a conflict.

{¶11} Appellant claims that a conflict exists because when a juvenile court commits a child to DYS under R.C. 2152.16, R.C. 2152.22 limits the court's authority to impose additional orders. Appellant argues that R.C. 2152.22 does not allow a trial court to impose a term of probation upon a child who is committed to the legal custody of DYS. Appellant therefore contends that R.C. 2152.22 conflicts with R.C. 2152.19(A)(4). Appellant asserts that when two statutes conflict, courts must apply the specific provision over the general provision. Appellant contends that R.C. 2152.22

is the specific provision that prevails over the general provision, R.C.

2152.19(A)(4).

{¶12} Appellant claims that once the trial court committed him to the

legal custody of DYS, the court relinquished "authority and jurisdiction to

DYS to care and provide for the child's rehabilitation."  Appellant thus

argues that the trial court had no authority to impose a term of probation as a

community control condition under R.C. 2152.19(A)(4).

{¶13} The state asserts that Appellant failed to raise any of these

issues during the trial court proceedings and that he, therefore, forfeited the

right to raise them on appeal.  The state additionally contends that Appellant

agreed to the disposition that the trial court imposed as part of a negotiated

plea deal.  The state thus claims that Appellant invited any error that may

have occurred.

{¶14} The state further argues that even if Appellant had preserved

the issues for appeal, his arguments lack merit.  The state notes that juvenile

courts have broad discretion when choosing among the dispositional options

and that R.C. 2152.19(A) gives juvenile courts authority to impose probation

as a term of community control, "in addition to any other disposition

authorized or required by" R.C. Chapter 2152.  R.C. 2152.19(A)(4)(a).  The

state therefore claims that the juvenile statutes do not prevent trial courts

from ordering a delinquent child to serve both a commitment to DYS and a term of probation for a delinquency adjudication.

## VOID VS. VOIDABLE

{¶15} We initially observe that Appellant asserts that the trial court's dispositional order is void under void sentence doctrine. However, in 2020, the Ohio Supreme Court overruled its sentencing cases that had held that a sentence is void when a trial court lacks statutory authority to impose it. *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, 162 N.E.3d 776; *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 42. Therefore, reviewing courts no longer recognize sentences as void when imposed without statutory authority. Rather, "[a] sentence is void only if the sentencing court lacks jurisdiction over the subject matter of the case or personal jurisdiction over the accused." *Henderson* at ¶ 27. Any other error in sentencing, including an error in applying the sentencing statutes, renders the sentence voidable, not void. *Id.*

{¶16} Consequently, we summarily reject Appellant's assertion that the trial court's dispositional order is void for allegedly failing to comply with the juvenile dispositional statutes. We may, however, review whether the court's dispositional order is voidable.

PLAIN ERROR

{¶17} We note, as does Appellee, that Appellant did not raise any objection to the court's decision to commit Appellant to DYS and to impose probation as a community control condition.[1]  Thus, during the trial court proceedings, Appellant did not argue that the juvenile statutes prohibited the trial court from imposing this disposition.

{¶18} It is well-settled that a party may not raise any new issues or legal theories for the first time on appeal.  *Stores Realty Co. v. Cleveland*, 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975).  Thus, a litigant who fails to raise an argument before the trial court forfeits the right to raise that issue on appeal.  *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, ¶ 30 (stating that "an appellant generally may not raise an argument on appeal that the appellant has not raised in the lower courts"); *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 21 (explaining that defendant forfeited his constitutional challenge by failing to raise it during trial court proceedings); *Gibson v. Meadow Gold Dairy*, 88 Ohio St.3d 201, 204, 724, N.E.2d 787

---

[1] We note that the state also argues that Appellant invited any error associated with the dual disposition by negotiating an agreement with the state and by agreeing to the disposition.  The dispositional hearing transcript suggests that the parties and the court engaged in some off-the-record discussions regarding the disposition of the case.  The record does not clearly indicate, however, whether Appellant agreed to the DYS commitment with the sex-offender treatment recommendation plus the probation term, or whether Appellant only agreed to the DYS commitment with the sex-offender treatment recommendation.  For this reason, we do not consider whether the invited error doctrine prevents Appellant from challenging the trial court's dispositional order.

(2000) (concluding that party waived arguments for purposes of appeal when party failed to raise those arguments during trial court proceedings); *State ex rel. Gutierrez v. Trumbull Cty. Bd. of Elections*, 65 Ohio St.3d 175, 177, 602 N.E.2d 622 (1992) (explaining that an appellant cannot "present * * * new arguments for the first time on appeal"). *Accord State ex rel. Jeffers v. Athens Cty. Commrs.*, 4th Dist. Athens No. 15CA27, 2016-Ohio-8119, fn.3 (stating that "[i]t is well-settled that failure to raise an argument in the trial court results in waiver of the argument for purposes of appeal"); *State v. Anderson*, 4th Dist. Washington No. 15CA28, 2016-Ohio-2704, ¶ 24 (explaining that "arguments not presented in the trial court are deemed to be waived and may not be raised for the first time on appeal").

{¶19} When an adjudicated delinquent child "forfeits the right to assert an error on appeal by failing to bring it to the trial court's attention in the first instance, an appellate court applies plain error review." *State v. Jones*, 160 Ohio St.3d 314, 2020-Ohio-3051, 156 N.E.3d 872, ¶ 17, citing *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 21-22; *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, 103 N.E.3d 784, ¶ 49 (determining that criminal plain error standard also applies to juvenile delinquency appeals); *State v. Perry*, 4th Dist. Pike No. 16CA863, 2017-Ohio-69, ¶ 14 (failure to object to during trial court proceedings

forfeits sentencing issues absent plain error).  Under the plain error standard of review, an appellant must demonstrate each of the following:  (1) an error occurred; (2) the error was " 'an "obvious" defect in the trial proceedings' "; and (3) the error affected the appellant's substantial rights, *i.e.*, a reasonable probability exists that the error affected the outcome of the trial court proceedings.  *State v. LaRosa*, 165 Ohio St.3d 346, 2021-Ohio-4060, 179 N.E.3d 89, ¶ 40 (noting that appellant bears burden to demonstrate plain error); *State v. Kirkland*, 160 Ohio St.3d 389, 2020-Ohio-4079, 157 N.E.3d 716, ¶ 71 and ¶ 72, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002) (stating that a "plain" error is an "obvious" error); *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22 (concluding that error affects substantial rights when reasonable probability exists that error affected the outcome of the trial court proceedings).

{¶20} Even when an appellant establishes all of the elements necessary to demonstrate plain error, appellate courts are not required to correct the error.  *Rogers* at ¶ 23.  Instead, appellate courts have discretion when deciding whether to correct plain error.  *Jones at* ¶ 17.  The Ohio Supreme Court has "admonished [appellate] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' "  *Barnes*, 94 Ohio St.3d at 27,

quoting *State v. Long* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶21} In the case at bar, we do not believe that Appellant has established that the circumstances require us to correct a plain error. First, Appellant has not shown that an obvious error occurred. Appellant has not cited any previous cases that have held that a juvenile court cannot impose both a DYS commitment and a term of community control consisting of court supervised probation that takes effect upon the child's release from DYS. In fact, the Third District Court of Appeals has rejected the same arguments that Appellant raises in this appeal. *In re A.F.*, 3rd Dist. Defiance No. 4-20-06, 2020-Ohio-4622, ¶ 39, *appeal not allowed,* 161 Ohio St.3d 1410, 2021-Ohio-106, 161 N.E.3d 694; *In re L.R.* 3d Dist. Defiance No. 4-19-19, 2020-Ohio-2990, ¶ 10 (rejecting argument that trial court's dispositional order that imposed a five-year term of court probation and committing him to DYS was "contradictory" and created "a conflict within the juvenile code").

{¶22} Moreover, we do not believe that the juvenile statutes obviously prohibit juvenile courts from committing a child to DYS's legal custody and imposing community control in the form of court supervised probation. Juvenile courts have broad discretion to craft dispositions in

order to ensure that the child is rehabilitated. *In re D.S.*, 148 Ohio St.3d 390,

2016-Ohio-7369, 71 N.E.3d 223, ¶ 20 ("A judge enjoys a great deal

of discretion in sentencing, particularly a juvenile court judge in fashioning a

rehabilitative disposition."); *In re Caldwell*, 76 Ohio St.3d 156, 159, 666

N.E.2d 1367 (1996) (noting that predecessor statute to R.C. 2152.19(A)(8)

gave juvenile court "discretion to take 'any' steps * * * necessary to fully

and completely implement the rehabilitative disposition of a juvenile").

Indeed, "[t]he principle underlying the juvenile justice system is to 'combine

flexible decision-making with individualized intervention to treat and

rehabilitate offenders rather than to punish offenses.' " *In re Anderson,* 92

Ohio St.3d 63, 65, 748 N.E.2d 67 (2001), quoting Rossum, *Holding*

*Juveniles Accountable: Reforming America's 'Juvenile Injustice System'*, 22

Pepperdine L.Rev. 907, 912 (1995)."

{¶23} To that end, R.C. 2152.19(A) gives juvenile courts broad

authority to impose "any" of the dispositional orders listed in the statute, "in

addition to any other disposition authorized or required."  R.C.

2152.19(A)(4)(a) and (b) allow a court to impose basic or intensive

probation, respectively, as a community control condition.  In addition, R.C.

2152.16 grants juvenile courts the authority to commit a child to DYS.

Nothing in R.C. 2152.19(A) nor R.C. 2152.16 prohibits a juvenile court

from imposing both a DYS commitment and one of the dispositional alternatives listed in R.C. 2152.19(A), such as probation as a community control condition.

{¶24} We recognize Appellant's argument that R.C. 2152.22 limits a juvenile court's authority over a child when the court commits the child to DYS's legal custody. Appellant asserts that after a court commits a child to DYS's legal custody, any release made after the prescribed minimum commitment is to be subject to DYS, not court, supervision. However, we do not agree with Appellant that R.C. 2152.22 obviously prevented the trial court from committing Appellant to DYS and also subjecting him to court supervised probation upon his release.

{¶25} R.C. 2152.22(A) begins by stating that "[w]hen a child is committed to the legal custody of the department of youth services under this chapter, the juvenile court relinquishes control with respect to the child so committed, except as provided in divisions (B), (C), (D), and (H) of this section or in sections 2152.82 to 2152.86 of the Revised Code." Divisions (B), (C), (D), and (H) specify the conditions under which the court may release a child from DYS. R.C. 2152.82 to 2152.86 contain the statutes regulating juvenile sex offender classifications.

{¶26} The next paragraph of R.C. 2152.22(A) prevents DYS from releasing or discharging a child before the prescribed minimum term of commitment expires or before "the child's attainment of 21 years of age, except upon the order of a court pursuant to division (B), (C), or (D) of this section or in accordance with section 5139.54 of the Revised Code." R.C. 5139.54 contains provisions that authorize a medical release from DYS.

{¶27} R.C. 2152.22(B)(1) governs judicial release during the first half of a child's prescribed minimum term or, if the court committed the child to DYS until the child reaches the age of 21, during the first half of the commitment beginning on the child's first day of commitment and ending on the child's 21st birthday. The statute provides:

> Unless the court grants judicial release under division (D)(1)(b) of this section, the court that commits a delinquent child to the department of youth services may grant judicial release of the child to court supervision under this division during the first half of the prescribed minimum term for which the child was committed to the department or, if the child was committed to the department until the child attains twenty-one years of age, during the first half of the prescribed period of commitment that begins on the first day of commitment and ends on the child's twenty-first birthday, provided any commitment imposed under division (A), (B), (C), or (D) of section 2152.17 of the Revised Code has ended.

{¶28} R.C. 2152.22(C)(1) applies when a court grants judicial release during the second half of a child's DYS commitment. The statute reads as follows:

> Unless the court grants judicial release under division (D)(1)(b) of this section, the court that commits a delinquent child to the department of youth services may grant judicial release of the child to department of youth services supervision under this division during the second half of the prescribed minimum term for which the child was committed to the department or, if the child was committed to the department until the child attains twenty-one years of age, during the second half of the prescribed period of commitment that begins on the first day of commitment and ends on the child's twenty-first birthday, provided any commitment imposed under division (A), (B), (C), or (D) of section 2152.17 of the Revised Code has ended.

{¶29} R.C. 2152.22(D)(1) contains additional provisions that allow a court to grant a child judicial release from DYS. The statute provides that the court:

> may grant judicial release of the child under this division at any time after the expiration of one of the following periods of time:
>
> (a) Except as otherwise provided in division (D)(1)(b) of this section, if the child was committed to the department for a prescribed minimum period and a maximum period not to exceed the child's attainment of twenty-one years, the court may grant judicial release of the child at any time after the expiration of the prescribed minimum term for which the child was committed to the department.

(b) If the child was committed to the department for both one or more definite periods under division (A), (B), (C), or (D) of section 2152.17 of the Revised Code and a period of the type described in division (D)(1)(a) of this section, all of the prescribed minimum periods of commitment imposed under division (A), (B), (C), or (D) of section 2152.17 of the Revised Code and the prescribed period of commitment of the type described in division (D)(1)(a) of this section shall be aggregated for purposes of this division, and the court may grant judicial release of the child at any time after the expiration of one year after the child begins serving the aggregate period of commitment.

(2) If a court grants a judicial release of a child under division (D)(1) of this section, the release shall be a judicial release to department of youth services supervision, if the release is granted during a period described in division (C)(1) of this section, and the second and third paragraphs of division (C)(3) of this section apply regarding the release. In all other cases, the release shall be a judicial release to court supervision, and the second paragraph of division (B)(3) of this section applies regarding the release.

{¶30} While little case law exists explaining the precise contours of R.C. 2152.22(D), the author of Ohio Juvenile Law states that judicial release following the expiration of the prescribed minimum term ordinarily "is to court supervision." Salvador, *Ohio Juvenile Law*, Section 22:4 (2021). The statutory language contained in R.C. 2152.22(D)(2) supports the author's assertion. As written, the statute states:

If a court grants a judicial release of a child under division (D)(1) of this section, *the release shall be a judicial release to department of youth services supervision, if the release is granted during a period described in division*

> *(C)(1) of this section*, and the second and third paragraphs of division (C)(3) of this section apply regarding the release.  In all other cases, the release shall be a judicial release to court supervision, and the second paragraph of division (B)(3) of this section applies regarding the release.

(Emphasis added.)

{¶31} Reading the statute in proper context shows that the judicial release is to DYS if the court grants the child release during the period defined in R.C. 2152.22(C)(1).  If the court does not grant judicial release during the period defined in R.C. 2152.22(C)(1) — i.e., "[i]n all other cases" — then "the release shall be a judicial release to court supervision."  As indicated above, R.C. 2152.22(C)(1) governs judicial release during the second half of confinement.

{¶32} In the case at bar, the trial court did not grant Appellant judicial release during the second half of his confinement.  Instead, the court committed Appellant to DYS for a minimum term of one year to a maximum period not to exceed the age of 21.  The court also indicated that upon Appellant's release from DYS, Appellant would be subject to court supervision.  R.C. 2152.22(D)(2) permits a court to order a child to be subject to court supervision upon release from DYS when the child's release occurs after the period of minimum confinement has expired.  Here, the court ordered Appellant to be subject to court supervision at a yet-to-be-

determined time after the period of his minimum commitment expires.

Thus, Appellant's assertion that R.C. 2152.22(D) prohibited the juvenile

court from placing him on court supervised probation is without merit.

Instead, as outlined above, the statute authorizes a juvenile court to release a

child from DYS subject to court supervision if the release occurs after the

child's minimum period of confinement expires. We therefore are unable to

find that the trial court plainly erred by imposing a DYS commitment

followed by a period of court supervised probation after his release from

DYS.

{¶33} Furthermore, even if we agreed with Appellant that the trial

court plainly erred by not ordering that he be released to DYS supervision

after his prescribed minimum commitment, we are unable to conclude that

the error results in a manifest injustice. Instead, the court's disposition

appears designed to fulfill the overall goal of the juvenile code: "the goal of

the juvenile code is to rehabilitate, not to punish, while protecting society

from criminal and delinquent acts during rehabilitation." *Caldwell*, 76 Ohio

St.3d at 158; *accord* R.C. 2152.01(A) (stating that the overriding purposes

for juvenile dispositions "are to provide for the care, protection, and mental

and physical development of children subject to this chapter, protect the

public interest and safety, hold the offender accountable for the offender's

actions, restore the victim, and rehabilitate the offender"). We do not believe that the court's decision to commit Appellant to DYS, followed by a period of court supervised probation, is manifestly unjust. Rather, the juvenile court reasonably could have determined that this type of disposition would have the best chance of rehabilitating Appellant while protecting society from additional delinquent acts during rehabilitation. Given the rehabilitative purposes of the juvenile system, we are unable to conclude that any error the trial court may have committed would result in a manifest injustice.

{¶34} Accordingly, based upon the foregoing reasons, we overrule Appellant's first and second assignments of error.

### THIRD ASSIGNMENT OF ERROR

{¶35} In his third assignment of error, Appellant contends that he did not receive effective assistance of counsel. Specifically, Appellant asserts that trial counsel was ineffective for failing to object to the trial court's dispositional order that committed him to DYS and that placed Appellant on probation as a community control condition. Appellant contends that if trial counsel had objected, then the trial court would have chosen to impose either a DYS commitment or a community control sanction rather than imposing both.

{¶36} To prevail on a claim of ineffective assistance of counsel, a delinquent child must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *See e.g., Strickland v. Washington,* 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Allen*, 4th Dist. Pickaway No. 19CA31, 2021-Ohio-648, ¶ 21. "In employing this standard we apply 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *State v. Day,* 149 N.E.3d 122, 2019-Ohio-4816, ¶ 27 (4th Dist.), quoting *Strickland* at 689. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* at 689.

{¶37} Moreover, when addressing an ineffective assistance of counsel claim, the reviewing court should not consider what, in hindsight, may have been a more appropriate course of action. *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 153; *State v. McKnight,* 4th Dist. Vinton No. 07CA665, 2008-Ohio-2435, ¶ 70. Rather, the reviewing court "must be highly deferential." *Strickland* at 689. As the *Strickland*

court stated, the party challenging counsel's effectiveness "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689.

{¶38} In the case at bar, we do not believe that Appellant has demonstrated that trial counsel performed deficiently or that any deficient performance affected the outcome of the proceedings. As we stated in our discussion of Appellant's first and second assignments of error, the juvenile statutes gave the trial court broad discretion to craft an appropriate disposition aimed at rehabilitation. We further determined that the trial court's disposition does not contravene the governing statutes. Therefore, even if counsel had objected, the trial court still may have determined to impose both a DYS commitment and a term of court supervision as a community control condition. Consequently, even if counsel's failure to object constituted deficient performance, Appellant cannot establish that counsel's failure to object affected the outcome of the proceedings.

{¶39} Accordingly, based upon the foregoing reasons, we overrule Appellant's third assignment of error.

CONCLUSION

{¶40} Having overruled Appellant's three assignments of error, we affirm the trial court's judgment.

**JUDGMENT AFFIRMED**.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED. Appellee shall recover any costs from Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court – Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. and Wilkin, J. concur in Judgment and Opinion.

For the Court,

_____

Jason P. Smith
Presiding Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**